## UNITED STATES v. LANGSTON.

(Circuit Court of Appeals, Fifth Circuit. February 1, 1898.)

### No. 493.

EXTRA PAY OF LETTER CARRIERS—TIME ACTUALLY EMPLOYED.

Under Act May 24, 1888, which provides that letter carriers employed more than eight hours per day shall be paid extra therefor, a carrier is not entitled to extra pay for the short intervals, or "swings," between his trips, when not actually employed in work, and not required to remain in or about the post office.

In Error to the District Court of the United States for the Southern Division of the Northern District of Alabama.

Charles J. Langston, the defendant in error, was a letter carrier of the United States at the post office in Anniston, Ala., and brought suit in the district court of the United States for the Northern district of that state for extra or additional compensation for certain time in which he was employed in excess of eight hours per day. The United States denied the allegations in plaintiff's petition, and on December 16, 1896, the said court filed the following findings: "The case of James B. Rivers, another letter carrier, having been submitted and tried at the same time." The findings cover both cases, but the United States has taken appeal in but one.

### Finding of Facts.

(1) The claimant Charles J. Langston was, from the 1st day of October in the year of 1890 to the 3d day of January in the year of 1893, a letter carrier

in the post office at the city of Anniston, in the state of Alabama, of the class entitled to a salary of $600 a year to the 30th day of October in the year of 1891, and $850 a year thereafter, but made no sufficient proof of overtime from October 1, 1890, to October 1, 1891.

(2) The claimant James B. Rivers was, from the 4th day of January in the year of 1893 to the 30th day of April in the year of 1893, a letter carrier in the post office of the said city of Anniston, in the state of Alabama, of the class entitled to a salary of $600 a year.

(3) As such carriers, said Langston and Rivers were from time to time employed in excess of eight hours per day in the performance of their duties. The excess over such eight hours occupied in the delivery of mail matter and the service incident thereto, calculated at the rate of $20\frac{5}{8}$ cents an hour during their respective terms of service at $600 a year, and $29\frac{5}{24}$ cents an hour while at $850 a year, would amount to $99.22 for the said Langston from October 1, 1891, to January 3, 1893, and $6.60 for said Rivers. This time was duly recorded on the time record of the office.

(4) In addition to the time served and recorded, as stated in the preceding finding, there were also certain intervals, or "swings," between their trips, during which they were not actively employed, or required by any express order of the postmaster to remain in or about the office. Such intervals, however, did not exceed one-half hour each in length, and were too short to be used for their personal benefit. They invariably remained in their uniforms during such intervals, and generally in the office.

### Conclusion of Law.

If they are entitled to be paid for the time occupied in these intervals, as set forth in the last preceding finding, the amount due them for the same would be $136.50 in the case of claimant Charles J. Langston, and $20.62 in the case of claimant James B. Rivers. Charles J. Langston, $235.72; James B. Rivers, $27.22.

### Judgment of the Court.

At a term thereof, held at Birmingham, November 23, 1896, "this cause having been submitted, after issue joined and testimony given, and the counsel for the parties having been heard, and the proceedings considered, it is thereupon, this 19th day of December, 1896, by Alexander Boarman, Judge, and by authority of this court, adjudged, ordered, and decreed that the claimant herein, James B. Rivers, have judgment for 27 $^{22}/_{100}$ dollars ($27.22), the full amount claimed therein, against the defendant, the United States of America, and his costs ($8.80) eight $^{80}/_{100}$ dollars; and that the claimant herein, Charles J. Langston, have judgment for two hundred and thirty-five $^{72}/_{100}$ ($235.72) dollars, of the amount claimed therein, against the defendant, the United States of America, and his costs, ($12.60) twelve $^{60}/_{100}$ dollars."

To these findings the United States assign five specifications of errors. The last one, which more specifically than the others raises the question submitted for the decision of this court, is as follows:

"(5) The court erred in allowing the plaintiff compensation for the intervals between trips, designated as 'swings,' during which he was not actively employed, or required by the orders of the postmaster to remain in or about the office."

Geo. H. Gorman and J. Ward Gurley, for the United States.

George A. King, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and SWAYNE, District Judge.

SWAYNE, District Judge, after stating the case as above, delivered the opinion of the court.

In this case the court has great difficulty in finding sufficient in the record to be able to hold the case and pass upon the questions discussed

in the briefs. It is evident, by finding No. 4, and also the finding erroneously termed "conclusion of law," that it was the purpose of the court below to give the defendant in error full compensation for the intervals known as short "swings," which do not exceed one-half hour in length; but there is nothing in the record to indicate the length of the "swings," nor the frequency with which they occur, nor the amount of extra time allowed therefor, and nothing by which the court can determine whether the amount of $136.50, awarded to the claimant Charles J. Langston, is correct, or not; and, while we think this sufficient error to reverse and remand, yet, in order to save further delay and expense, we have concluded to pass upon it as discussed in the briefs of the counsel submitted. The determination of this question rests solely upon the construction of Act Cong. May 24, 1888 (1 Supp. Rev. St. [2d Ed.] 587), which reads:

"Be it enacted," etc., "that hereafter eight hours shall constitute a day's work for letter carriers in the cities or postal districts connected therewith, for which they shall receive the same pay as is now paid as for a day's work of a greater number of hours."

"If any letter carrier is employed a greater number of hours per day than eight, he shall be paid extra for the same in proportion to the salary now fixed by law."

It will be observed that the contention of the defendant in error rests solely upon the latter part of this act; that is, he must show to the court that he was employed a greater number of hours per day than eight before he shall be paid extra for service. The first part of the act merely prescribes that eight hours shall constitute a day's work for letter carriers, and its construction, so far as the intent of the legislators is concerned, gathered from the history of the act, clearly shows that it was not their purpose to make this eight consecutive hours of employment; and if it had stopped here, under previous decisions of the courts of the United States, it would be impossible for the claimant to recover anything extra for the additional hours of service. But the latter part of the act declares that, "if a letter carrier is employed a greater number of hours per day than eight, he shall be paid extra." This necessarily implies, not only that he must establish the fact that he performed service during the extra time over eight hours, but as a basis for this claim of extra time he must establish the fact that he was actually employed eight hours in the performance of letter carrier's duty before the time for which extra pay is demanded can be said to be extra time.

It is admitted by both counsel for plaintiff and defendant that the proper determination of the issues in the case depends upon the interpretation of the word "employed" as used in the act. On behalf of the defendant in error, it is contended that he is employed when he is in uniform and voluntarily remains in or about the post office, though not actively employed, or required by any express order of the postmaster to do so; and on the part of the plaintiff in error it is insisted that he is not so employed during such intervals, unless he is actively engaged at work as a letter carrier. This does not appear to be a new question, but has been settled by the supreme court of the United States in U. S. v. Post, 148 U. S. 124, 13 Sup. Ct. 567. In that case

the right of a letter carrier to recover, under Act May 24, 1888, for extra service, was considered, and the term "employed" defined by Justice Blatchford, speaking for the court, as follows:

"This extra pay is given to him by the statute distinctly for his being employed a greater number of hours per day than eight. The statute does not say how he must be employed, or of what such employment is to consist. It is necessary only that he should be a letter carrier, and be employed in work that is not inconsistent with his general business under his employment as a letter carrier."

This would seem to dispose of the contention of the defendant in error by holding that he was only employed, according to the language of the act, when he was lawfully employed "in work" not inconsistent with his general business as a letter carrier.

We are of opinion that the number of such claims, or the amount that may be involved in them, is of no assistance to the court in arriving at the proper interpretation of the language of the statute, any more than an extended discussion of the history of the eight-hour law, or the inscription on the tombstone of the man who first agitated the question; and we believe these matters might properly have been omitted from briefs.

It is undoubtedly the purpose of that act to provide that a letter carrier shall not actually be employed in his duties more than eight hours per day without receiving extra compensation for the same. We are therefore clearly of the opinion that the defendant in error, during and for the short intervals, or "swings," between his trips, in which he was not actually employed, or required by any express order of the postmaster to remain in or about the office, which intervals or "swings" did not exceed one-half hour in length, and were periods in which he was not actually employed according to the statute, is not entitled to extra pay, and that the allowance in the court below for the same was erroneous. The court below allows $136.50 for such extra employment, and to that extent the judgment should be modified. It is therefore ordered, adjudged, and decreed that the judgment of the district court in favor of Langston be reduced from $235.72 to $99.22, and the judgment, as so modified, be, and the same is, affirmed.