# WHITE v. WITWER GROCER CO.
## No. 12225.

Circuit Court of Appeals, Eighth Circuit.
Dec. 11, 1942.

John D. Randall, of Cedar Rapids, Iowa, for appellant.

George Stewart Holmes, of Cedar Rapids, Iowa, for appellee.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a judgment dismissing an action brought by appellant as plaintiff, to recover unpaid minimum wages and unpaid overtime compensation alleged to be due under Sections 7 and 8 of the Fair Labor Standards Act of 1938, Title 29 U.S.C.A. §§ 201–219. It will be convenient to refer to the parties as they were designated in the trial court.

Plaintiff pursuant to Section 216(b) of Title 29 U.S.C.A. sued in his own behalf and as representing other employees. The facts were stipulated and the Court made findings which embodied the facts stipulated.

Paragraph one of the stipulation identical with other paragraphs dealing with other employees, except as to rate of pay and period of employment involved, is as follows:

"That Donald Bruce was employed by I. O. A. Foods for the week ending October 22, 1938 (the week just prior to the effective date of the Fair Labor Standards Act) at and for the sum of 35¢ per hour; that since that time and up to and including March 11, 1939, he was employed by the defendant, the hours and at the rate of pay and received the weekly compensation all as appearing in Exhibit 'A' attached hereto and by this reference made a part hereof; that the plaintiff makes no claim for compensation for Donald Bruce for any time subsequent to March 11, 1939".

Exhibit "A" shows that Donald Bruce was paid 31¢ per hour with time and one-half for overtime after the week ending October 22, 1938. Similar facts appear as to the other employees whose pay in some instances was the same as that of Donald Bruce. As to others the pay was 40¢ per hour reduced to 35.3¢ per hour after the week ending October 22, 1938, and overtime was paid to these employees as required by the Act.

On the facts as stipulated and found by the Court the action was dismissed and plaintiff prosecutes this appeal seeking reversal on the ground that "the Court erred in determining that the regular rate of pay of plaintiff's assignors was the fictitious hourly rate shown by Exhibits A, B, C, D and E rather than the rate at which the plaintiff appellant's assignors * * * were employed the week just prior to the effective date of the Fair Labor Standards Act".

"The error of the Court was in concluding as a matter of law that plaintiff has failed to prove any violation of Sec. 6 or 7 of the Fair Labor Standards Act by the defendant and is not entitled to recover".

It is contended that the rate of pay after October 29, 1938, was a fictitious one and that the regular rate within the meaning of Section 7 of the Fair Labor Standards Act was the rate at which the employees were paid prior to the effective date of the Act.

Section 6 of the Act provides for minimum wages fixing the rate during the first year from the effective date of the Act at not less than 25¢ per hour; during the next six years at not less than 30¢ per hour, and thereafter at not less than 40¢ per hour, or the rate (not less than 30¢ per hour) prescribed in the applicable order of the administrator, whichever is lower.

Section 7 provides for maximum hours, no employer except as otherwise provided being permitted to employ anyone (1) for a work week longer than 44 hours during the first year from the effective date of the Act, (2) for a work week longer than 42 hours during the second year, or (3) for a work week longer than 40 hours after the expiration of the second year from such date unless such employee receives compensation for his employment in excess of the hours provided at a rate not less than one and one-half times the regular rate at which he is employed.

██ The wages paid by the employer in the instant case as disclosed by the undisputed facts did not violate any provision of the Act, either as to minimum wages or overtime. The Act, however, does not

define the term "regular rate". Its meaning is the subject of judicial interpretation, having in mind the purpose of the Act. Walling, Administrator v. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716. The Act was manifestly intended to place a floor under wages and a ceiling over hours of employment.

The limitation in hours had apparently two purposes, the spreading of work and extra compensation for overtime. Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L. Ed. 1682. The "freezing" of wages at a minimum level as of any particular date would not effectuate the purpose of the Act. Congress has not indicated that such was its intention. In the absence of a declaration to that effect a Court would not be justified in indulging in speculation. The reference in Section 7 does not appear to be a legislative declaration that the wages to be paid are to be calculated on the basis of the wages established before the effective date of the Act. The reference to the "regular rate" at which the employee is employed indicates an adoption of what might be called the basic wage, the wage paid for labor under the minimum rather than a legislative statement that what was paid before the effective date should be the wage from thence on.

There was no formal written agreement attached to any of the exhibits or the pleadings, but the Court found as an inference from the facts stipulated that a few days prior to the effective date of the Act plaintiff's principals by "mutual agreement with defendant were re-employed" at the rates and hours specified in the attached exhibits. That the effect of this new employment and wage scale was to permit the employees to continue to work their sixty-hour week and earn a weekly compensation exactly the same as they had theretofore earned, and the Court concluded as a matter of law "that the agreement entered into by the defendant and its employees a few days prior to the effective date of the Fair Labor Standards Act was lawful under said Act and not a violation of Sec. 6 of said Act".

In Williams v. Jacksonville Terminal Co., 315 U.S. 386, 62 S.Ct. 659, 667, 86 L.Ed. 914, the Supreme Court said "by continuing to work, a new contract was created". Contracts between employer and employee as to wages are not made illegal except as the minimum wage or the maximum hours provision are violated. The con-

tract here violates neither of these provisions. Each of the parties claiming wages was employed as the stipulation shows and the Court correctly inferred that such employment implies a contract. McCluskey v. Cromwell, 11 N.Y. 593; State v. Deck, 108 Mo.App. 292, 83 S.W. 314; State v. Foster, 37 Iowa 404.

Section 3 of the Act, subparagraph (g) declares that " 'employ' includes to suffer or permit to work". The stipulation referring to both periods involved recites that the person was "employed". As to both periods of employment there was a contract or there was a hiring at will. In this condition of employment no right of the employee was violated. Indeed he was subject to discharge and another could have been employed at lower wages provided the specific provision as to pay or hours was not violated. The "regular rate" did not pertain to and go with the job irrespective of the ability and training of the person filling it. In the case of Walling, Ad., v. Belo, supra, in which was involved the construction of the provision of the Act in respect to wage agreements made between the corporation and its employees the Court among other things said: "The problem presented by this case is difficult —difficult because we are asked to provide a rigid definition of 'regular rate' when Congress has failed to provide one. Presumably Congress refrained from attempting such a definition because the employment relationships to which the Act would apply were so various and unpredictable. And that which it was unwise for Congress to do this Court should not do". [316 U.S. 624, 62 S.Ct. 1228, 86 L.Ed. 1716.]

The wages paid by defendant after October 22, 1938, though less than the hourly rate previously paid, were in excess of the minimum provided by Section 6 of the Act, and for the hours worked overtime in excess of 44 hours a week the employees were paid time and one-half on the basis of the reduced wages. This, we think, was not violative of Section 7 of the Act. In Williams v. Jacksonville Terminal Co., 315 U.S. 386, 62 S.Ct. 659, 672, 86 L.Ed. 914, the Court in referring to this Act said: "It required that workers in these industries receive a compensation at least as great as that fixed by the Act. Except for that requirement the employer was left free, in so far as the Act was concerned, to work out the compensation problem in his own way".

The Supreme Court in the Belo Case, supra, seems to have answered the question presented by the present situation when it said: "It is no doubt true, as petitioner contends, that the purpose of respondent's arrangement with its employees was to permit as far as possible the payment of the same total weekly wage after the Act as before. But nothing in the Act bars an employer from contracting with his employees to pay them the same wages that they received previously, so long as the new rate equals or exceeds the minimum required by the Act".

Looking to the language of the Act providing the remedy for its violation, it is observed that Section 16 provides for the civil remedy against an employer who violates Sections 6 and 7. The criminal liability arises only in the event of violations of Section 15, and no concern is expressed in that Section as to one who might agree to a reduction of wages with his employees. Notice should also be taken of Section 18 which provides that "no provision of this Act [sections 201–219 of this title] shall justify any employer in reducing a wage paid by him which is in excess of the applicable minimum wage under this Act [sections 201–219 of this title] or justify any employer in increasing hours of employment maintained by him which are shorter than the maximum hours applicable under this Act [such sections]".

In footnote 6, page 630 of 316 U.S., page 1226 of 16 S.Ct., 86 L.Ed. 1716, of the opinion in the Belo case the Court says "whatever the legal effect of this language, it is certainly not a prohibition and the Administrator does not rely upon it".

The quoted words from Section 18 are apparently precautionary—a warning to employers that the Act is not designed to lower wages or raise hours of employment because of the minimum or maximum established. It does not, however, prohibit agreements between employer and employee. If it were intended so to do then the remedy for damages in Section 16 would manifestly have included actions for damages for its breach, but it limits such actions to violations of Sections 6 and 7. See Remer v. Czaja, D.C., 36 F.Supp. 629.

In view of the conclusion which we have reached on this phase of the case we pretermit consideration of the contentions of the defendant to the effect that the plaintiff is not the real party in interest and that the claims of the respective employees are barred by the Iowa Statutes of Limitations neither of which questions was passed upon by the Trial Court.

The judgment appealed from is, therefore, affirmed.